# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

MANUEL LUKE HILLS,

                             Plaintiff,

     v.

CITY OF CHULA VISTA, CHULA VISTA POLICE DEPARTMENT, OFFICER SYMONETTE, OFFICER LOPEZ, OFFICER MARTIN, OFFICER BANDY, SERGEANT ALVAREZ, CHIEF ROXANA KENNEDY, AND JOHN DOES 1 through 5, inclusive,

                            Defendants.

Case No.:  23-cv-1067-DMS-DDL

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; DENYING DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT; DENYING DEFENDANTS' MOTION TO STRIKE**

       Pending before the Court is Defendants' motion to dismiss Plaintiff's Third Amended Complaint (TAC, ECF No. 53) pursuant to Rule 12(b)(6). (Defendants' Motion, ECF No. 54). Plaintiff, proceeding pro se, filed a response in opposition. (Plaintiff's Opposition, ECF No. 55).[1] Defendants filed a reply. (Defendants' Reply, ECF No. 56).

---

[1] Plaintiff re-filed his response in opposition without leave of court. (ECF No. 58). The Court will only consider Plaintiff's first filed response in opposition. It also appears that the two oppositions differ only in format.

The Court found this matter to be suitable for resolution without oral argument pursuant to Civil Local Rule 7.1(d)(1).  (ECF No. 57).  For the reasons discussed below, Defendants' motion is granted in part and denied in part.

## I.    BACKGROUND

The Court accepts the following allegations as true for the purpose of resolving Defendants' motion to dismiss.  On November 30, 2022, between 8:00 and 9:30 PM, Plaintiff was pulled over by Defendants Officers Symonette and Lopez, who were in two different Chula Vista Police Department ("CVPD") vehicles.  (TAC ¶¶ 13–14).  Plaintiff did not put his vehicle into park and observed Defendant Symonette approach with his gun drawn.  (*Id.* ¶ 15).  While Defendants Symonette and Lopez "aim[ed] their guns at [Plaintiff]," Defendant Symonette "ordered Plaintiff to place his keys on the dashboard." (*Id.* ¶ 16).  Then, Defendants Symonette and Lopez "forcefully pulled Plaintiff out of the vehicle and promptly handcuffed him." (*Id.* ¶ 17).

At some point during the interaction, Defendants Officers Martin and Bandy arrived. (*Id.* ¶ 18).  While Plaintiff was handcuffed and watched by Defendant Bandy, Defendants Symonette, Lopez, and Martin searched Plaintiff's vehicle without his consent or warrant. (*Id.*).  Defendant Symonette then arrested Plaintiff for driving under the influence, without conducting a field sobriety test.  (*Id.* ¶ 19).  Then, Defendant Sergeant Alvarez arrived and Plaintiff perceived him to act "in a hostile and dismissive manner." (*Id.* ¶ 20).  Defendant Alvarez "order[ed] the towing of Plaintiff's vehicle and his transportation to the police station." (*Id.*).

At the police station, Plaintiff was informed that the officers had received a warrant to have Plaintiff's blood drawn and his blood was "forcibly drawn against his will." (*Id.* ¶ 21).  Plaintiff was not shown the warrant nor was he read his *Miranda* rights.  (*Id.*). Plaintiff was in custody for fourteen hours.  (*Id.* ¶ 22). While in detention, an unnamed officer broke his gold bracelet and his vehicle sustained damage to its front bumper.  (*Id.*). From these events, Plaintiff alleges to have suffered "emotional distress, depression, anxiety, and flashbacks." (*Id.* ¶ 23).

2

On June 8, 2023, Plaintiff, at first proceeding pro se, initiated this action against Defendants City of Chula Vista, CVPD, and John Does 1 through 5. (ECF No. 1). Soon after, Defendants filed a motion to dismiss Plaintiff's original complaint pursuant to Rule 12(b)(6) and 12(f). (ECF No. 3). Plaintiff then retained counsel and filed his first amended complaint on January 12, 2024, naming the current set Defendants. (ECF No. 34). On March 15, 2024, Plaintiff, this time proceeding pro se, filed his Second Amended Complaint ("SAC") with leave from the Court. (ECF No. 46). Defendants then filed a motion to dismiss Plaintiff's SAC (ECF Nos. 47–48) and this Court granted Defendants' motion with leave to amend. (ECF No. 52). On August 13, 2024, Plaintiff filed his TAC. (ECF No. 53).

**A. Claims**

Plaintiff's TAC alleges the following categories of claims against the following Defendants:

1. 42 U.S.C. § 1983 (individual capacity) for violations of the Fourth Amendment right against unlawful detention and arrest against Defendants Symonette, Lopez, and Martin. (TAC ¶¶ 24–30).

2. 42 U.S.C. § 1983 (individual capacity) for violations of the Fourth Amendment right against excessive force against Defendant Symonette. (*Id.* ¶¶ 31–40).

3. 42 U.S.C. § 1983 (individual capacity) for violations of the Fourth Amendment right against unlawful searches and seizures against Defendants Symonette, Lopez, and Martin. (*Id.* ¶¶ 41–45).

4. 42 U.S.C. § 1983 (*Monell*) for violation of the Fourth Amendment against Defendants City of Chula Vista and CVPD. (*Id.* ¶¶ 46–52).

5. California Penal Code § 240 (Assault) and § 242 (Battery) against Defendant Symonette. (*Id.* ¶¶ 53–60).

6. California Common Law False Imprisonment against Defendants Symonette, Lopez, and Martin. (*Id.* ¶¶ 61–64).

7. California Government Code § 52.1 (Bane Act) against Defendants Symonette, Lopez, and Martin. (*Id.* ¶¶ 65–72).

8. 42 U.S.C. § 1983 for undetermined violations against Defendants Alvarez (individual capacity), Bandy (individual capacity), and Chief Roxana Kennedy (official and individual capacity). (*Id.* ¶ 11).

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If Plaintiff "ha[s] not nudged" his "claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). "[I]n general, courts must construe pro se pleadings liberally." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).

When a court grants a motion to dismiss a complaint, it must then decide whether to

4

grant leave to amend.  Leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and "this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment," *Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007), or "if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F. 3d 1124, 1133 (9th Cir. 2013).

## III.    DISCUSSION

### A. Request for Judicial Notice

Federal Rule of Evidence 201(b) permits judicial notice of any fact "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  "A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. But a court cannot take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999 (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 669 (9th Cir. 2001)).

Defendants asks this Court to take judicial notice (1) of Plaintiff's Government Claim for damages, (2) City of Chula Vista's denial of Plaintiff's Government Claim, and (3) the Blood Sample Warrant #66366 issued by the Superior Court of California, San Diego. (Defendants' Motion, at 42–44).  Plaintiff did not address Defendants' request for judicial notice in his response in opposition.

The Court takes judicial notice of the filing date and alleged content of Plaintiff's Government Claim for damages, the City of Chula Vista's denial of Plaintiff's Government

Claim, and the existence of the blood warrant. These particular details are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See Clarke v. Upton*, 703 F. Supp. 2d 1037, 1042 (E.D. Cal. 2010) (taking judicial notice of filing date, alleged content, and rejection of California Government Tort claims); *Davis v. Zimmerman*, No. 17-cv-1230-BAS-NLS, 2018 WL 1806101, at *6 n.5 (S.D. Cal. Apr. 17, 2018) (taking judicial notice of claim and state entity's response); *see also Bryan v. City of Carlsbad*, 297 F. Supp. 3d 1107, 1115–16 (S.D. Cal. 2018) (taking judicial notice of the existence of a warrant as public record). The Court does not take judicial notice of the truth of the facts alleged in Plaintiff's Government Claim for damages or the facts alleged in the blood warrant. These details are subject to reasonable dispute. *See Bryan*, 297 F. Supp. 3d at 1116 (declining to take judicial notice of the "reasonably disputable facts" contained in a warrant).

### B. 42 U.S.C. § 1983 (individual capacity)

To state a claim for relief under § 1983, Plaintiff must sufficiently allege "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Defendants only contest whether Plaintiff suffered a violation of his federal rights. (Defendants' Motion, at 24–31).

#### 1. Fourth Amendment – Unlawful detention and arrest

To state an unlawful detention claim under § 1983 for violation of the Fourth Amendment, a plaintiff must allege that he was detained without reasonable suspicion. *Florida v. Royer*, 460 U.S. 491, 500 (1983). Reasonable suspicion exists when, "in light of the totality of the circumstances, the officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity." *U.S. v. Basher*, 629 F.3d 1161, 1165 (9th Cir. 2011) (quoting *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007)).

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification."

*Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." *Id.* at 966. "If probable cause exists, it provides a complete defense." *Estate of Silva by and through Allen v. City of San Diego*, No. 18cv02282 L (MSB), at *5 (S.D. Cal. Dec. 16, 2022) (citing *Hutchinson v. Grant*, 796 F.2d 288, 290 (9th Cir. 1986)).

Plaintiff's TAC asserts that the initial stop by Defendant Symonette and subsequent arrest by Defendants Symonette, Lopez, and Martin were without reasonable suspicion or probable cause and were therefore unlawful. (TAC ¶¶ 24–30). Defendants argue that Officers Symonette and Martin did have probable cause—observing, *inter alia*, Plaintiff "driv[ing] erratically," "not stop[ping] at multiple blinking red lights," and "[u]pon stopping Plaintiff, . . . objective symptoms of Plaintiff being under the influence." (Defendants' Motion, at 25–26).

Defendants ultimately misconstrue Plaintiff's TAC. Defendant's arguments are not based on the facts alleged in Plaintiff's TAC—rather, Defendants' arguments are based on their own allegations. Nowhere in Plaintiff's TAC does Plaintiff allege that he was driving "erratically" or acting in a way that objectively justified detaining and arresting Plaintiff. Because the Court is obligated to construe Plaintiff's alleged facts "in the light most favorable to the nonmoving party," the Court finds that Plaintiff's TAC alleges sufficient facts to show that he was detained without reasonable suspicion and arrested without probable cause. Accordingly, the Court declines to dismiss Plaintiff's § 1983 claims with respect to Fourth Amendment violations for unlawful detention and arrest.

### 2. Fourth Amendment – Excessive Force

The Fourth Amendment protects against the unreasonable seizure of persons. U.S. Const. amend. IV. The Clause is applicable to the States by the Fourteenth Amendment. *See Ker v. California*, 374 U.S. 23, 30 (1963). "Even if a seizure is reasonable in a particular circumstance, *how* that seizure is carried out must also be reasonable." *Estate of*

*Strickland v. Nevada Cnty.*, 69 F.4th 614, 619 (9th Cir. 2023) (emphasis in original). "So the Fourth Amendment also prohibits the use of excessive force. Our 'calculus of reasonableness' in these circumstances 'must embody allowance for the fact that police officers are often forced to make split-second judgments' and we do not apply the '20/20 vision of hindsight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (citations omitted).

A Fourth Amendment excessive force § 1983 claim is cognizable where "officers employed an 'objectively unreasonable' amount of force under the 'totality of the circumstances.' This inquiry requires balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* (quoting *Graham*, 490 U.S. at 396) (citations omitted). Courts consider "(1) 'the type and amount of force inflicted,' (2) the severity of the crime at issue,' (3) 'whether the suspect posed an immediate threat to the safety of the officers or others,' and (4) 'whether the suspect was actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *O'Doan v. Sanford*, 991 F.3d 1027, 1037 (9th Cir. 2021). "But this list isn't exhaustive; [courts] may also consider other relevant factors, such as 'the availability of less intrusive alternatives to the force employed, whether proper warnings were given[,] and whether it should have been apparent to officers that the person they used force against was emotionally disturbed.'" *Id.* (quoting *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017)). "Of these, the 'immediate threat to safety' factor is the most important.'" *Peck v. Montoya*, 51 F.4th 877, 887 (9th Cir. 2022) (quoting *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021)).

Plaintiff alleges that Defendant Symonette violated his Fourth Amendment right against excessive force when Defendant Symonette pointed a loaded firearm at Plaintiff. (TAC ¶¶ 36). Plaintiff also cites to *Espinosa v. City and County of San Francisco*, 598 F.3d 528 (9th Cir. 2010), for authority that "pointing a loaded gun at a suspect, especially when the suspect poses no immediate threat, constitutes excessive force under the Fourth Amendment." (*Id.* ¶ 37). Defendants counter by arguing that Plaintiff's TAC only offers

1  conclusory statements to show that he was complying with the officer's commands.

2  (Defendants' Motion, at 27–28).

3       The facts, as alleged in Plaintiff's TAC, are sufficient to plausibly state a Fourth

4  Amendment excessive force claim under § 1983.  "Pointing a loaded gun at a suspect,

5  employing the threat of deadly force, is use of a high level of force."  *Espinosa*, 595 F.3d

6  at 537.  "[P]ointing guns at persons who are compliant and present no danger is a

7  constitutional violation."  *Thompson v. Rahr*, 885 F.3d 582, 587 (9th Cir. 2018) (quoting

8  *Baird v. Renbarger*, 576 F.3d 340, 346 (7th Cir. 2009)).  Plaintiff's TAC does not allege

9  any facts evincing noncompliance with or threats to Defendant Symonette, or any attempt

10  by Plaintiff to flee.  Nor could the traffic stop be construed as a particularly severe alleged

11  crime.  Based on the present allegations, which the Court must accept as true at this stage

12  of the pleadings, Officer Symonette's drawing and pointing of a loaded firearm at Plaintiff

13  was an objectively unreasonable amount of force when balanced against the government's

14  need for such force.  Accordingly, the Court declines to dismiss Plaintiff's § 1983 claims

15  with respect to Fourth Amendment excessive force claims.

16       3.  Fourth Amendment – Unlawful Search[2]

17       The Fourth Amendment also protects against "unreasonable searches."  U.S. Const.

18  amend. IV.  "[S]earches typically must be conducted pursuant to a warrant issued by an

19  independent judicial officer.  However, there are exceptions to this general rule, including

20  the 'automobile exception,' under which a warrantless search of a vehicle is permitted 'if

21  there is probable cause to believe that the vehicle contains evidence of a crime.'"  *United*

22  *States v. Faagai*, 869 F.3d 1145, 1149–50 (9th Cir. 2017) (quoting *United States v. Brooks*,

23  610 F.3d 1186, 1193 (9th Cir. 2010)) (citations omitted).

24

25

26

27  _____

[2] While Plaintiff's heading states a claim for "unlawful search and seizure under 42 U.S.C. § 1983," (TAC, at 9), Plaintiff only alleges "unlawful search[es]" under the Fourth Amendment.  (TAC ¶¶ 42–45). Accordingly, the Court interprets this section of Plaintiff's TAC to only allege Fourth Amendment unlawful search claims.

28

Plaintiff's TAC alleges that Defendants Symonette, Lopez, and Martin lacked probable cause to search his vehicle during the traffic stop. (TAC ¶¶ 42–45). Plaintiff's TAC also alleges that because Defendants conducted a search without a warrant and without any of the applicable exceptions to the general requirement of probable cause, the search was unlawful. (*Id.*). Defendants argue that they lawfully searched Plaintiff's vehicle because they had probable cause to detain and arrest Plaintiff. (Defendants' Motion, at 25–27).

As discussed above, Plaintiff's TAC alleges sufficient facts to show that he was detained without reasonable suspicion and arrested without probable cause. Thus, based on the record presently before the Court, the Court finds that Plaintiff has sufficiently alleged that Defendants unlawfully searched his vehicle. Accordingly, the Court declines to dismiss Plaintiff's § 1983 claims with respect to Fourth Amendment violations for unlawful searches.

### C. Qualified Immunity

Defendant Officers are entitled to qualified immunity if (1) "the officer's conduct violated a statutory or constitutional right; and if (2) "that right was 'clearly established' at the time of the incident." *Shane v. County of San Diego*, 677 F. Supp. 3d 1127, 1134 (S.D. Cal. 2023). Because this Court concludes that Plaintiff's TAC sufficiently alleges violations of Plaintiff's Fourth Amendment rights against unlawful detention, arrest, searches, and excessive force, the only question that remains is whether those rights were "clearly established" at the time of the incident.

"For the purposes of qualified immunity, a right is clearly established if 'a reasonable officer would recognize that his or her conduct violates that right under the circumstances faced, and in light of the law that existed at that time.'" *Shane*, 677 F. Supp. 3d at 1134 (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006)). "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority." *Id.* (quoting *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019)). "The court need not, however, find 'a prior

case with identical, or even materially similar facts'; it is enough that 'the preexisting law provided the defendants with fair warning that their conduct was unlawful.'" *Id.* (quoting *Kennedy*, 439 F.3d at 1065). "If a right is not clearly established, the defendant is entitled to qualified immunity. If the right is clearly established, the court determines 'whether the defendant's conduct was objectively legally reasonable given the information possessed by the defendant at the time of his or her conduct.'" *Id.* (quoting *Lawrence v. U.S.*, 340 F.3d 952, 956 (9th Cir. 2003)) (citations omitted). "[T]he plaintiff . . . 'bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000)). Plaintiff "must either explain why [his] case is obvious under existing general principles or, more commonly, show specific cases that control or reflect a consensus of non-binding authorities in similar situations." *Waid v. Cnty. of Lyon*, 87 F.4th 383, 388 (9th Cir. 2023).

"When defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless the court can determine, based on the complaint itself, that qualified immunity applies. While courts may consider qualified immunity at the pleadings stage, the Ninth Circuit has noted that '[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making.' The Ninth Circuit has also observed that, by considering qualified immunity at the pleadings stage, 'the courts may be called upon to decide far-reaching constitutional questions on a nonexistent factual record.' In considering qualified immunity, the court must accept the allegations in the plaintiff's complaint as true and construe them in the light most favorable to the plaintiff." *Shane*, 677 F. Supp. 3d at 1134–35 (first quoting *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2019); and then quoting *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004), *abrogated on other grounds by Wilkie v. Robbins*, 551 U.S. 537 (2007)) (citations omitted).

23-cv-1067-DMS-DDL

1    1. <u>Unlawful Detention, Arrest, and Search</u>

2    "Cases 'cast at a high level of generality' are unlikely to establish rights with the

3    requisite specificity. *Waid*, 87 F.4th at 388 (quoting *Brosseau v. Haugen*, 543 U.S. 194,

4    199 (2004) (per curiam)). However, "in an obvious case, these standards can 'clearly

5    establish' the answer, even without a body of relevant case law." *Brosseau*, 854 U.S. at

6    199. To support his argument that his Fourth Amendment rights against unlawful

7    detention, arrest and searches were clearly established at the time of his interaction with

8    Defendants, Plaintiff cites to a bevy of cases that generally stand for the proposition that

9    police officers need reasonable suspicion to detain and probable cause or a warrant to arrest

10   an individual or conduct a warrantless search. (TAC ¶¶ 24–29, 41–45).

11   Taking the allegations in Plaintiff's TAC as true and construing them in the light

12   most favorable to Plaintiff, as this Court is required to do, the Court finds that Plaintiff has

13   met his burden to demonstrate that his alleged violated rights were clearly established at

14   the time of the incident with Defendants. Plaintiff's Fourth Amendment unlawful

15   detention, arrest, and search claims, as currently pled, are "obvious cases" under general

16   Fourth Amendment principles. Plaintiff's TAC does not allege any facts that would serve

17   as the basis for reasonable suspicion or probable cause. Nor do Defendants offer any

18   evidence to be incorporated by reference that would supplement Plaintiff's allegations.[3]

19   Furthermore, based on the present allegations, the Court finds that Defendants' conduct

20   was not objectively legally reasonable given the information they possessed at the time of

21   their conduct. Accordingly, the Court finds that qualified immunity does not shield

22   Defendants from Plaintiff's Fourth Amendment § 1983 unlawful detention, arrest, and

23   search claims.

24

25   _____

26

27   [3] Simply submitting body camera footage does not guarantee a finding of reasonable suspicion or probable cause. *See, e.g.*, *Lechner v. LVMPD*, 696 F. Supp. 3d 963, 990 (D. Nev. 2023) (noting that body camera footage showed that defendant officers did not have reasonable suspicion or probable cause to detain plaintiff).

28

23-cv-1067-DMS-DDL

### 2. Excessive Force

Plaintiff points to *Espinosa v. City and County of San Francisco*, 595 F.3d 528 (9th Cir. 2010), *abrogated on other grounds Cnty. of Los Angeles v. Mendez*, 581 U.S. 420 (2017) to support his excessive force argument. (*Id.* ¶ 37). The relevant excessive force claim in *Espinosa* involved a residential confrontation by defendant police officers who pointed loaded guns at a suspect. *Espinosa*, 595 F.3d at 537. In affirming the district court's denial of defendants' motion for summary judgment as to the plaintiff's excessive force claims, the Ninth Circuit noted that the suspect "had not been accused of any crime," "had not caused the officers to forcible enter the home," "did not present a danger to the public," could not escape from defendant police officers, and generally received suggestions that the suspect posed "some risk of harm." *Id.* The Court also benefits from *Thompson v. Rahr*, 885 F.3d 582 (9th Cir. 2018), where the Ninth Circuit held that "pointing guns at persons who are compliant and present no danger is a constitutional violation." *Thompson*, 885 F.3d at 587 (quoting *Baird*, 576 F.3d at 346).

As with Plaintiff's other Fourth Amendment claims, the Court finds that Plaintiff has met his burden to demonstrate that his Fourth Amendment right against excessive force was clearly established at the time of the incident. Plaintiff's excessive force claim appears to also be obvious under Fourth Amendment principles. Nothing in Plaintiff's TAC suggests that Plaintiff was noncompliant with or posed a threat to Defendant Symonette. Again, based on the present allegations, the Court finds that Defendant Symonette's conduct was not objectively legally reasonable given the information he possessed at the time of their conduct. Thus, the Court finds that qualified immunity does not shield Defendant Symonette from Plaintiff's Fourth Amendment § 1983 excessive claim.

### D. *Monell* Claims

Plaintiff alleges *Monell* claims against Defendants City of Chula Vista and CVPD on theories that City of Chula Vista has "policies, customs, and practices" that violated Plaintiff's constitutional rights or "fail[ed] to adequately train and supervise its officers." (TAC ¶ 47). A municipality cannot be vicariously liable under § 1983 for the acts of its

13

employees, but a municipality can be liable for deprivations of constitutional rights deriving from the execution of a municipality's policies or customs. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To state a *Monell* claim under § 1983, a plaintiff must sufficiently allege "(1) he was deprived of a constitutional right; (2) the [local government] had a policy; (3) the policy amounted to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). The plaintiff must show a "direct causal link" between the policy and the constitutional deprivation. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc).

"A 'policy' is 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)). A plaintiff can satisfy *Monell*'s policy requirement in one of three ways. First, a plaintiff can show that a local government acted "pursuant to an expressly adopted official policy." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Thomas v. Cnty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014)). Second, "a public entity may be held liable for a 'longstanding practice or custom.' Such circumstances may arise when, for instance, the public entity 'fail[s] to implement procedural safeguards to prevent constitutional violations' or, sometimes, when it fails to train its employees adequately." *Id.* (citations omitted). Third, a plaintiff can show that "the individual who committed the constitutional tort was an official with final policy-making authority" or that "such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 974 (quoting *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010)).

Plaintiff attempts to allege a "policy" under an express and longstanding practice or custom theory, but not under a final policy making authority or ratification theory. (TAC

1  ¶ 48).  For the reasons stated below, Plaintiff fails to sufficiently allege that Defendants
2  had a "policy" that caused his alleged constitutional rights violations.

3                  1.  <u>Expressly Adopted Policy</u>

4         Plaintiff's TAC does not allege any expressly adopted policy by Defendants.
5  Plaintiff simply concludes that "[t]he City of Chula Vista, acting through its Police
6  Department, had a policy, practice, or custom of conducting traffic stops and arrests in a
7  manner that violated the Fourth Amendment rights of individuals."  (TAC ¶ 48).  Because
8  this is a conclusory allegation, the Court declines to accept it as true.  *See In re Gilead Scis.*
9  *Secs. Litig.*, 536 F.3d at 1055.  Accordingly, Plaintiff fails to allege a *Monell* claim under
10  an expressly adopted policy theory.

11                  2.  <u>Longstanding Practice or Custom: Failure-to-train Theory</u>

12         "Failure to train may amount to a policy of 'deliberate indifference,' if the need to
13  train was obvious and the failure to do so made a violation of constitutional rights likely."
14  *Doughtery v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *City of Canton v.*
15  *Harris*, 489 U.S. 378, 390 (1989).  "To allege a failure to train, a plaintiff must include
16  sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a
17  municipal training policy that amounts to a deliberate indifference to constitutional rights;
18  and (3) that the constitutional injury would not have resulted if the municipality properly
19  trained their employees."  *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153–54 (9th
20  Cir. 2021).  "A pattern of similar constitutional violations by untrained employees is
21  'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to
22  train."  *Connick v. Thompson*, 563 U.S. 51, 62 (2011).  "[G]enerally, a single instance of
23  unlawful conduct is insufficient to state a claim for municipal liability under section 1983."
24  *Benavidez*, 993 F.3d at 1154.  "[I]n rare instances, single constitutional violations are so
25  inconsistent with constitutional rights that even such a single instance indicates at least
26  deliberate indifference of the municipality."  *Id.* at 1153.  However, single-incident liability
27  under a failure-to-train theory is inapplicable where "[local government] employees are not
28  making life-threatening decisions."  *Benavidez*, 993 F.3d at 1154–55.  The Supreme Court

1  "posed [a] hypothetical example of a city that arms its police force with firearms and
2  deploys the armed officers into the public to capture fleeing felons without training the
3  officers in the constitutional limitation on the use of deadly force. . . . The Court sought not
4  to foreclose the possibility, however rare, that the unconstitutional consequences of failing
5  to train could be so patently obvious that a city could be liable under § 1983 without proof
6  of a pre-existing pattern of violations." *Connick*, 563 U.S. at 63–64.

7      Plaintiff supports his failure-to-train theory with a single incident—the traffic stop
8  and arrest occurring on November 30, 2022. (TAC ¶¶ 13–14). From this single incident,
9  from which the alleged Fourth Amendment rights violations arose, Plaintiff concludes that
10  Defendant City of Chula Vista had a policy of deliberate indifference to constitutional
11  violations. (TAC ¶ 48). However, unlike the single-incident hypothetical in *Connick*,
12  Plaintiff's single incident only involves an alleged "high level of force." *Espinosa*, 595
13  F.3d at 537. Therefore, Plaintiff's single incident is insufficient to establish the existence
14  of a policy or custom for *Monell* liability. *See Benavidez*, 993 F.3d at 1154.

15      Accordingly, the Court **DISMISSES** Plaintiff's *Monell* claims.

16  **E. State Law Claims**

17      1.  Statute of Limitations

18      Defendants argue that Plaintiff cannot add state law claims to his amended complaint
19  because the statute of limitations have run and that the relation back doctrine cannot save
20  Plaintiff's "new" state law claims. (Defendants' Motion, at 18–19). However, Plaintiff's
21  state law assault, battery, and Bane Act claims have not yet expired. *See* Cal. Civ. Proc.
22  Code § 335.1 ("Within two years: An action for assault, battery, or injury to, or for the
23  death of, an individual caused by the wrongful act or neglect of another."); *Fenters v.
24  Yosemite Chevron*, 761 F. Supp. 2d 957, 995–96 (E.D. Cal. 2010) (holding Bane Act claims
25  involving personal injury to have a two-year statute of limitations under Cal. Civ. Proc.
26  Code § 335.1). Because Plaintiff alleges his injuries to have occurred on November 30,
27  2022, Plaintiff had until November 30, 2024 to allege these state law claims against
28  Defendants. He did just that. *See* ECF No. 34.

Plaintiff's state law false imprisonment claims pose a separate inquiry. According to Defendants, they appear to have run: The statute of limitations for California false imprisonment claims is one year, Cal. Civ. Proc. Code § 340(c) ("Within one year: An action for . . . false imprisonment."), Plaintiff did not name Defendants until his first amended complaint on January 12, 2024, and Plaintiff did not raise false imprisonment as a claim until his SAC on March 15, 2024. Defendants' Motion, at 18–19; ECF No. 34; ECF No. 46.

Defendants are ultimately incorrect. While Plaintiff's original complaint named "John Does 1-5" as defendants, (ECF No. 1, at 3), Plaintiff also added the badge numbers and last names of Officers Symonette, Lopez, Martin, Bandy, and Alvarez and included in his complaint an attachment matching the badge numbers to the five Defendants. (*Id.* at 3, 7). Because the Court is obligated to construe pro se pleadings liberally, and since Plaintiff was proceeding pro se when he filed his first complaint, the Court construes Plaintiff to have listed Officers Symonette, Lopez, Martin, Bandy, and Alvarez as Defendants in his first complaint. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Accordingly, the Court finds that Plaintiff timely named those five Defendants in his original complaint.[4]

Furthermore, while not specifically argued by Defendants, Plaintiff's state law false imprisonment claims against Defendants Symonette, Lopez, and Martin relate back to the original complaint under Rule 15(c). Under Rule 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when: the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Indeed, Plaintiff's false imprisonment claims—which were first formally raised in his SAC on March 15, 2024 and were hinted at in his original complaint—directly arose out of the

---

[4] The Court's analysis here excludes Defendant Chief Kennedy. For reasons discussed below, all claims against Chief Kennedy are dismissed. Accordingly, the Court declines to address any statute of limitations arguments regarding any state claims levied against her.

alleged unlawful detention and arrest alleged in his original complaint. *See* ECF No. 1, at 4; ECF No. 46, at 12–13. Accordingly, the Court finds that Plaintiff's false imprisonment claims relate back to his timely original complaint.

### 2. Immunity under California Government Code § 820.2; § 820.4; and California Penal Code § 847(b)(1)

Defendants also assert immunity under California Government Code §§ 820.2, 820.4, and California Penal Code § 847(b)(1). Under the circumstances of this case, none of these statutes afford Defendants immunity from Plaintiff's state law claims. *See Liberal v. Estrada*, 632 F.3d 1064, 1084 (9th Cir. 2011) ("As a matter of law, section 820.2 immunity does not apply to an officer's decision to detain or arrest a suspect."), *abrogated in part on other grounds by Hampton v. California*, 83 F.4th 754 (9th Cir. 2023); Cal. Gov't Code § 820.4 ("Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."); *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) ("California denies immunity to police officers who use excessive force in arresting a suspect."). Under the text of California Penal Code § 847(b)(1), immunity from civil liability only applies if "[t]he arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." Cal. Penal Code § 847(b)(1). Because the Court finds that Defendants did not have any basis for reasonable suspicion or probable cause for the detention and arrest, Defendants should not be afforded this immunity.

### 3. Presentment of Claims Under the Government Claims Act

Under the California Government Claims Act, "[a] plaintiff must present a timely written claim for damages to the [public] entity" before suing that entity. *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 208 (2007), *superseded in part by statute on other grounds*, Cal. Gov't Code § 905(m), *as recognized in Rubenstein v. Doe No. 1*, 3 Cal. 5th 903, 914 (2017). "Since 1988, such claims must be presented to the government entity no later than six months after the cause of action accrues. Accrual of the cause of action for purposes of the government claims statute is the date of accrual that would pertain under

the statute of limitations applicable to a dispute between private litigants. Timely claim presentation is not merely a procedural requirement, but is . . . 'a condition precedent to plaintiff's maintaining an action against defendant.' Complaints that do not allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused are subject to a general demurrer for not stating facts sufficient to constitute a cause of action." *Id.* at 208–09 (quoting *State of California v. Superior Court*, 32 Cal. 4th 1234, 1240 (2004)) (citations omitted).

Defendants seek to dismiss Plaintiff's state law Assault, Battery, False Imprisonment, and Bane Act claims for failure to comply with the California Government Claims Act. (Defendants' Motion, at 29–30). The noncompliance, according to Defendants, is Plaintiff's "fail[ure] to allege compliance with the Government Claims Act" in his TAC. (*Id.* at 32).

Plaintiff is not required to specifically allege in his complaint that he has complied with the Government Claims Act. Rather, Plaintiff's TAC needs only "allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused." *Shirk*, 42 Cal. 4th at 209; *see also Moore v. Twomey*, 120 Cal. App. 4th 910, 914 (2004) ("Government Code section 945.6 requires 'any suit brought against a public entity' to be commenced no more than six months after the public entity rejects the claim. A civil action is 'commenced' by filing a complaint with the court." (quoting Cal. Gov't Code § 945.6(a)(1)) (citations omitted)). Plaintiff's TAC alleges neither. Nonetheless, the evidence Defendants submitted, regarding Plaintiff's presentment of claims to the City of Chula Vista, Office of the City clerk on January 17, 2023, (Defendants' Motion, at 48), the denial of the claim on February 20, 2023, (*id.* at 53), and the fact that Plaintiff filed his initial complaint on June 8, 2023, collectively demonstrate that Plaintiff complied with the six-month deadline to file his state law claims following the denial by the City of Chula Vista of Plaintiff's Government Claims Act claims. Therefore, Plaintiff's TAC ultimately did what it was required to do under the Government Claims Act.

Defendants further argue that Plaintiff violated the aforementioned six-month presentment deadline set forth in Cal. Gov't Code § 945.6(a)(1) by failing to specifically allege Defendants Symonette, Lopez, Martin, Bandy, Alvarez, and Chief Kennedy in his first Complaint. (Defendants' Motion, at 32). Because the City of Chula Vista, Office of the City Clerk, sent a written denial of Plaintiff's claims on February 20, 2023, Defendants assert that Plaintiff had until August 20, 2023 to file or amend his complaint to name the individual city Defendants. (Defendants' Motion, at 29). While Plaintiff timely filed his initial complaint before August 20, 2023, he did not name the aforementioned Defendants until his first amended complaint on January 12, 2024.

Defendants' argument is ultimately unpersuasive. First, as a threshold matter, the Court interprets Plaintiff's TAC to not allege any state-law claims against Chief Kennedy. (TAC ¶¶ 65–72). Defendant's statute of limitations arguments as they relate to when Chief Kennedy was named are not dispositive. Second, as discussed above, the Court liberally interprets Plaintiff's initial complaint to have named Officers Symonette, Lopez, Martin, Bandy, and Alvarez as Defendants because he included their badge numbers and last names in his complaint. (ECF No. 1, at 3, 7). Accordingly, the Court finds that Plaintiff's TAC complied with the Government Claims Act's six-month deadline to commence an action against a public entity.

### 4.  California Penal Code § 240 (Assault) and § 242 (Battery)

Assault is "[a]n unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.'" Cal. Penal Code § 240. To sufficiently allege a civil claim for assault under California law, Plaintiff must allege that "(1) defendant[s] acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm." *Yun Hee So v. Sook Ja Shin*, 212 Cal. App. 4th 652, 668–69 (2013).

Battery is "any willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 242. To sufficiently allege a civil claim for battery under California law, Plaintiff must allege that "(1) defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff." *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 747 (N.D. Cal. 1998).

"Physical injury is not a required element of either assault or battery." *Kisesky v. Carpenters' Trust for So. California*, 144 Cal. App. 3d 222, 232 (1983). Furthermore, "[u]nder California law, a defendant cannot be convicted of both assault and battery, as every battery includes an element of assault, 'and is, in fact, a consummated assault.'" *Id.* (quoting *People v. Lopez*, 47 Cal. App. 3d 8, 15 (1975)).

However, "[a] police officer 'may use reasonable force to make an arrest, prevent escape or overcome resistance." *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1170, 1187 (E.D. Cal. 2010) (quoting *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526–27 (2009)). Therefore, plaintiffs alleging civil claims of assault and battery must also sufficiently allege "that [Defendant Officers] used unreasonable force against [them] to make a lawful arrest or detention." *Arpin v. Santa Clara "Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001). "Determination whether an officer breached such duty is 'analyzed under the reasonableness standard of the Fourth Amendment to the United [States] Constitution.' Thus, the question is whether a peace officer's actions were objectively reasonable based on the facts and circumstances confronting the peace officer." *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1166 (N.D. Cal. 2009) (quoting *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 (2004), *abrogated in other part by Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622 (2013)).

Defendants argue that Plaintiff's TAC either fails to allege all the required elements or only provides conclusory statements to support his civil claims for assault and battery. (Defendants' Motion, at 33–34). Plaintiff disagrees. (Plaintiff's Opposition, at 3–4). Plaintiff alleges that Defendant Symonette "point[ed] a firearm at Plaintiff's head,"

"pull[ed] Plaintiff out of his vehicle and handcuff[ed] him." (TAC ¶¶ 55–56). From these actions, Plaintiff alleges that he suffered, *inter alia*, "emotional distress" and "mental anguish." (TAC ¶ 59).

The Court finds that Plaintiff's TAC sufficiently alleges torts of assault and battery against Defendants Symonette. Furthermore, as discussed above, the Court finds Plaintiff plausibly alleges Defendant Symonette used unreasonable force when he pointed his gun at Plaintiff without reasonable suspicion or probable cause. Accordingly, the Court declines to dismiss Plaintiff's assault and battery claims.

### 5. California Common Law False Imprisonment

"'False imprisonment is the unlawful violation of the personal liberty of another.' The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief.'" *Knapps*, 647 F. Supp. at 1165 (first quoting Cal. Penal Code § 236; and then quoting *Lyon v. Fire Ins. Exch.*, 161 Cal. App. 4th 880, 888 (2008)). "California law protects a law enforcement officer from liability for false arrest or false imprisonment where the officer, acting within the scope of his or her authority, either (1) effects a lawful arrest or (2) has reasonable cause to believe the arrest is lawful." *Marsh v. San Diego Cnty.*, 432 F. Supp. 2d 1035, 1054 (S.D. Cal. 2006) (citing *Cervantes v. United States*, 330 F.3d 1186, 1188 (9th Cir. 2003)).[5]

Plaintiff's TAC levies false imprisonment claims against Defendants Symonette, Lopez, and Martin. (TAC ¶¶ 61–64). Defendants do not dispute the first or third elements of false imprisonment. At issue is whether Plaintiff's detention was "without lawful privilege." Plaintiff argues that because the officers lacked reasonable suspicion or probable cause, the arrest was therefore unlawful. Defendants contend Plaintiff "fail[ed]

---

[5] This standard is also codified in Cal. Gov't Code Section 820.4, as discussed in Defendants' Motion. (Defendants' Motion, at 35).

to plead essential facts such as why no reasonable suspicion or probable cause existed to legally effectuate the detention then arrest." (Defendants' Motion, at 34).

As discussed above, Plaintiff's TAC sufficiently alleges that the Defendant Officers lacked reasonable suspicion to detain and probable cause or a warrant to arrest Plaintiff. Plaintiff therefore sufficiently alleges claims for false imprisonment against Defendants Symonette, Lopez, and Martin. Accordingly, based on the present record, the Court declines to dismiss Plaintiff's false imprisonment claims against Defendants Symonette, Lopez, and Martin.

### 6. Bane Act

The Thomas Bane Civil Rights Act ("Bane Act") is codified in California Civil Code § 52.1. "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Cornell v. City and Cnty. of San Francisco*, 17 Cal. App. 5th 766, 791–92 (2017). Violations of the federal and California Constitution are all Bane Act violations. *See* Cal. Civ. Code § 52.1(b). "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022).

The Ninth Circuit has held that "the Bane Act does not require the 'threat, intimidation[,] or coercion element of the claim to be transactionally independent from the constitutional violation alleged" so long as the claimant shows the defendant had a "specific intent" to commit the constitutional violation. *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). The specific intent requirement is satisfied where the defendant acted with "[r]eckless disregard of the right at issue." *Estate of Serna v. County of San Diego*, No. 20-cv-2096-LAB-MSB, 2022 WL 827123, at *8 (S.D. Cal. Mar. 18, 2022) (quoting *Cornell*, 17 Cal. App. 5th at 804) (alteration in original).

A local government can be vicariously liable for its employees' Bane Act violations under a theory of respondeat superior. See *Gant v. Cnty. of Los Angeles*, 772 F.3d 608 (9th Cir. 2014) (explaining that "[u]nder California law, public entities are liable for actions of their employees within the scope of employment," including for Bane Act claims) (citing Cal. Gov't Code § 815.2(a)).

### a. Constitutional Rights

Plaintiff alleges the following constitutional rights violations under the Bane Act: (1) his Fourth Amendment and California state right to be free from unreasonable searches and seizures; and (2) his Fourteenth Amendment due process rights. (TAC ¶ 69). As discussed above, the Court finds that Plaintiff's TAC sufficiently alleges violations of his constitutional right against unreasonable searches and seizures (with respect to excessive force). However, Plaintiff has not alleged any facts demonstrating how his Fourteenth Amendment due process rights have been violated. Accordingly, the Court **DISMISSES** Plaintiff's Bane Act claim with respect to violations of his Fourteenth Amendment due process rights.

### b. Specific Intent

To sufficiently allege specific intent in a Bane Act claim, Plaintiff must satisfy two requirements. First, the right at issue must be "clearly delineated and plainly applicable under the circumstances of the case." *Cornell*, 17 Cal. App. 5th at 803. Second, the defendant must have "commit[ted] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that . . . right." *Id.*

Defendants argue that Plaintiff's TAC has not "stated facts sufficient to allege an unlawful act with the specific intent to violate Plaintiff's right to freedom from unreasonable seizure, excessive force, and warrantless searches." (Defendants' Motion, at 34). Plaintiff did not respond to Defendants' argument in his opposition.

Ultimately, Plaintiff's TAC does not sufficiently allege specific intent for his Bane Act claims. Plaintiff has successfully articulated rights that are "clearly delineated and

plainly applicable under the circumstances" of this case because the Court finds that Plaintiff has stated § 1983 Fourth Amendment individual capacity claims. Nonetheless, Plaintiff's TAC is silent regarding any allegations as to intent or reckless disregard—which courts in the Ninth Circuit have held to be sufficient when joined with allegations of constitutional rights violations to establish specific intent in a Bane Act claim. *See Smith v. City of Marina*, 709 F. Supp. 3d 926, 939 (N.D. Cal. 2024) ("At the motion to dismiss stage, however, allegations of conduct that violates constitutional rights coupled with allegations that the conduct was done with reckless disregard for a party's rights can be sufficient to establish specific intent."); *see also Velasquez, Jr. v. City of Hayward*, No. 24-cv-1221-TSH, 2024 WL 4780887, at *6 (N.D. Cal. Nov. 13, 2024) (same). Accordingly, the Court **DISMISSES** Plaintiff's Bane Act claims with respect to his federal and state rights against unreasonable searches and seizures with leave to amend.

## F. 42 U.S.C. § 1983 for undetermined violations by Defendants Alvarez (individual capacity), Bandy (individual capacity), and Chief Roxana Kennedy (official and individual capacity)

In this Court's earlier order granting Defendants' motion to dismiss Plaintiff's SAC for failure to state a claim, the Court granted Defendants' motion regarding Plaintiff's § 1983 claims against Defendants Alvarez, Bandy, and Chief Kennedy because Plaintiff failed to allege any facts to support a finding of liability under § 1983 against them. (ECF No. 52, at 7). Plaintiff's TAC still fails to allege facts suggesting that Defendants Alvarez and Bandy are liable in their individual capacity as members of CVPD, or that Defendant Chief Kennedy is liable in her official or individual capacity as Chief of CVPD. Accordingly, the Court **DISMISSES** Plaintiff's § 1983 claims against Defendants Alvarez, Bandy, and Chief Kennedy.

## G. Rule 12(e) Motion for More Definite Statement

A motion for a more definite statement under Rule 12(e) is proper if the at-issue pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "A motion for a more definite statement must be considered in light

of the liberal pleading standards of Rule 8(a)." *Beckner v. El Cajon Police Dep't*, No. 07-0509 W(BLM), 2007 WL 2873406, at *1 (S.D. Cal. Sept. 28, 2007). "Thus, a motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading." *Id.*

The Court finds that the parts of Plaintiff's TAC that the Court has not dismissed are sufficiently pled to put Defendants on notice of the claims against them. Defendants can and have drafted responsive pleadings against those claims. Accordingly, the Court **DENIES** Defendant's alternative motion for more definite statement.

### H. Rule 12(f) Motion to Strike

Defendants seek to dismiss or strike Plaintiff's request for punitive damages and attorney's fees and costs under 42 U.S.C. § 1988. (Defendants' Motion, at 36–37). In particular, Defendants argue that Plaintiff cannot recover attorneys' fees and costs because Plaintiff is proceeding pro se and cannot recover attorneys' fees. (*Id.* at 36).

Under 42 U.S.C. § 1988, "the [district] court, in its discretion, may allow the prevailing party [in a § 1983 case], other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). It is well settled law that under § 1988, pro se litigants cannot recover attorneys' fees. *See Kay v. Ehrler*, 499 U.S. 432, 438 (1991) ("A rule that authorizes awards of counsel fees to pro se litigants—even if limited to those who are members of the bar—would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf."). However, Plaintiff, at some point during this litigation, was represented by counsel and presumably incurred legal fees. *See, e.g.,* ECF No. 34; ECF Nos. 42–44. Defendants cite to no case law that would prevent Plaintiff from recovering those fees should he prevail. Furthermore, the Ninth Circuit has generally allowed pro se litigants to recover costs separate from attorneys' fees. *See Merrell v. Block*, 809 F.2d 639, 642 (9th Cir. 1987) (remanding to district court a determination of costs incurred by pro se litigant relating to the litigation). According, the Court declines to grant Defendants' request to strike Plaintiff's request for attorneys' fees and costs.

Defendants also argue that Plaintiff's TAC fails to sufficiently allege "the requisite 'evil motive or intent,' pursuant to California Civil Code Section 3294(a), or 'oppression, fraud, or malice' on the part of any individual" for Defendant to recover punitive damages. (*Id.*). Defendants are ultimately incorrect. It is true that "California law governs Plaintiff's substantive claim for punitive damages under California Civil Code § 3294." *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 406 (C.D. Cal. 2005). Under California law, Plaintiff must plead that Defendants "engaged in 'oppression, fraud, or malice.' Malice is conduct intended 'to cause injury to the plaintiff' or 'despicable conduct' carried out 'with a willful and conscious disregard of the rights or safety of others.'" *Terpin v. AT And T Mobility LLC*, 118 F.4th 1102, 1112 (9th Cir. 2024) (first quoting Cal. Civ. Code § 3294(a); and then quoting Cal. Civ. Code § 3294(c)(1)).

However, "the Federal Rules of Civil Procedure govern the punitive damages claim procedurally with respect to the adequacy of the pleadings." *Id.*; *see also Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1018 (S.D. Cal. 2010) ("Where state law directly conflicts with applicable provisions of the Federal Rules of Civil Procedure, federal courts must apply the Federal Rules—not state law."); *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000) ("[A] federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction."). Under the less demanding federal pleading standard pursuant to Rule 9(b), Plaintiff's TAC needs only "include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Clark*, 106 F. Supp. at 1019; Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Plaintiff's TAC sufficiently alleges malice. (TAC ¶¶ 31–40). Accordingly, the Court declines to dismiss Plaintiff's punitive damages request at this time.

## I. Leave to Amend

"A district court may deny a plaintiff leave to amend if it determines that…the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure

deficiencies." *Telesaurus VPC, LLC*, 623 F.3d at 1003. "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

This is Plaintiff's fourth complaint. The Court previously provided Plaintiff with leave to amend his complaint to cure the deficiencies in his SAC. Plaintiff's TAC reintroduces his *Monell* claims from his first amended complaint, except with less specificity as to the policy, practice, or custom he alleges to have violated his constitutional rights. Plaintiff's § 1983 claims against Defendants Alvarez, Bandy, and Chief Kennedy remain insufficient due to a lack of alleged facts and specificity in his pleadings. Because Plaintiff has repeatedly failed to cure these deficiencies in his amended pleadings, those claims are dismissed without leave to amend. Plaintiff's Bane Act claims are dismissed with leave to amend—except for Plaintiff's alleged violation of his Fourteenth Amendment Due Process rights, which is dismissed without leave to amend since Plaintiff has gradually diminished any specific allegations regarding this claim from his first through third amended complaint.

## IV.    SUMMARY AND CONCLUSION

Based on the foregoing,

1.  The Court declines to dismiss Plaintiff's 42 U.S.C. § 1983 individual capacity claims for violations of the Fourth Amendment right against unlawful detention and arrest against Defendants Symonette, Lopez, and Martin.

2.  The Court declines to dismiss Plaintiff's 42 U.S.C. § 1983 individual capacity claim for violations of the Fourth Amendment right against excessive force against Defendant Symonette.

3.  The Court declines to dismiss Plaintiff's 42 U.S.C. § 1983 individual capacity claims for violations of the Fourth Amendment right against unlawful searches against Defendants Symonette, Lopez, and Martin.

4. The Court **DISMISSES** Plaintiff's 42 U.S.C. § 1983 *Monell* claims against Defendants City of Chula Vista and CVPD without leave to amend.

5. The Court declines to dismiss Plaintiff's assault and battery claims against Defendant Symonette.

6. The Court declines to dismiss Plaintiff's false imprisonment claims against Defendants Symonette, Lopez, and Martin.

7. The Court **DISMISSES** Plaintiff's Bane Act claims against Defendants Symonette, Lopez, and Martin with leave to amend—except for Plaintiff's Bane Act claim for violation of his Fourteenth Amendment Due Process rights, which is dismissed without leave to amend.

8. The Court **DISMISSES** Plaintiff's 42 U.S.C. § 1983 against Defendants Alvarez, Bandy, and Chief Kennedy without leave to amend.

9. The Court **DENIES** Defendants' alternative motion for more definitive statement.

10. The Court **DENIES** Defendants' motion to strike Plaintiff's requests for attorney's fees, costs, and punitive damages.

Plaintiff shall have **thirty (30) days** from the date of this Order to file any amended complaint.

**IT IS SO ORDERED**.

Dated:  November 26, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court

23-cv-1067-DMS-DDL